# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CINDY JEANNETTE BRINDLEY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-0352 |
| ) | Judge Trauger |
| PHILIPS ELECTRONICS NORTH AMERICA ) | |
| CORPORATION, *et al.* ) | |
| ) | |
|    Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the court is (1) the plaintiff's Motion for Remand (Docket No. 11), to which the defendants have responded (Docket No. 15), (2) a Motion to Dismiss Certain Claims filed by defendant Philips Electronics North America Corporation ("Philips") (Docket No. 16), to which the plaintiff has responded (Docket No. 22), and (3) a Motion to Dismiss filed by defendants Troy Davenport, Alison Robinett, Peter Price, Dana Scott, Robert Steele, and Kathy Jones (collectively the "Individual Defendants") (Docket No. 18), to which the plaintiff has responded (Docket No. 23).[1]  The defendants also filed a joint reply in support of their motions.

---

[1]As discussed in the court's July 12, 2011 Order, the plaintiff made a filing error in submitting her response to the Individual Defendants' motion, as, instead of filing the supporting Memorandum of Law for her response, she submitted the Individual Defendants' Memorandum of Law.  (Docket No. 32; Docket No. 23 Ex. 1.)  The court's Order directed the plaintiff to file a notice of explanation and the appropriate Memorandum by July 14, 2011.  (Docket No. 32.)  The plaintiff filed the notice (citing an "error") and the correct Memorandum on the afternoon of July 14th.  (Docket No. 33.)  As a joint reply in support of the motions has already been filed, no further briefing is necessary.

1

(Docket Nos. 30-31). For the reasons discussed herein, the Motion for Remand will be denied, and the Motions to Dismiss will be granted. Consistent with this, the case will proceed as a retaliatory discharge action against Philips. All other claims and defendants will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Cindy Jeannette Brindley, is a resident of Williamson County, Tennessee, and she worked for Philips as a "purchasing representative" in Franklin, Tennessee from April 14, 2008 to March 2, 2010.[2] (Docket No. 12 at 2.) Individual Defendants Troy Davenport (Manager of Purchase Services), Alison Robinett (Supervisor), Robert Steele (Director of Operations), Dana Scott (buyer), Peter Price (Parts Procurement Manager), and Kathy Jones (Human Resources Director) all also worked for Philips during the course of the plaintiff's employment.

The plaintiff's job was to obtain raw materials for Philips at the best possible price. These materials would be sold by Philips to customers. The plaintiff maintains that Philips had strict purchasing rules, regulations, and ethical policies, and that, when she was hired, she was told that Philips took these rules and regulations very seriously. One of these rules was that "under no circumstances was the pricing information of one of Philip's vendors to be disclosed to another vendor." (*Id*. at 3.) That is, the pricing of materials purchased from vendors was to be kept "strictly confidential" by Philips employees, and there were also similar rules prohibiting the solicitation of gifts and other consideration from vendors, which might generate a conflict of

---

[2]Unless otherwise noted, the facts are drawn from the Amended Complaint. (Docket No. 12.)

interest.

The plaintiff maintains that "it . . . did not take long" for her to discover that other purchasers at Philips did not abide by these rules and regulations. (*Id.*) In June 2008, she discovered that the pricing of one vendor was being disclosed to other vendors in order to generate lower prices from those vendors, a practice referred to by the plaintiff as "bid rigging" that was clearly in violation of company rules. (*Id.*) The plaintiff alleges that she also observed purchasing agents submitting purchase orders to Philips with a price higher than that negotiated with the vendor. Not only is this practice prohibited by Philips's corporate policies, but, the plaintiff alleges, it created an atmosphere ripe for kickbacks and bribes between the vendor and purchaser.

Around the same time, the plaintiff was also having trouble with defendant Scott, a buyer. The plaintiff claims that Ms. Scott "frequently spoke loudly to vendors and engineers with multiple sexual innuendos" that the plaintiff could "easily" overhear. (*Id.* at 4.) Indeed, Scott allegedly "came back from a field trip and boasted of sexual relations with a vendor despite the fact that she was married." (*Id.*) The plaintiff also alleges that Scott, in violation of company policy, solicited gifts and airplane tickets from vendors and gave preferential treatment to vendors who gave her gifts, even if that meant that Philips ended up paying higher prices for its purchases.

The plaintiff reported the bid rigging and kickback schemes to supervisor Robinett. When Robinett refused to provide a "satisfactory response," the plaintiff maintains that she brought her concerns to defendant Davenport, who "told her that his supervisor [defendant]

3

Steele said that violation of the Philips policy was acceptable and it was done all of the time and that Steele actually condoned the disclosure of confidential pricing information." (*Id*. at 6.) When the plaintiff met with Steele one-on-one, she claims that, despite reminding Steele of the company's ethics policies, she received a similar response, that is, "he did not have a problem with the practice of giving out confidential information if it gave Philips a better price advantage." (*Id*.)

The plaintiff brought her concerns about Ms. Scott to defendant H.R. Director Jones, informing her of the "frank sexual conversations with vendors that occurred almost daily" between Scott and vendors. (*Id*.) Despite her complaints, nothing substantive was done to address the plaintiff's concerns.

Rather, the plaintiff maintains that, following her complaints, she was "attacked by her colleagues and her work was called into question for alleged deficiencies." (*Id*.) When Davenport and Robinett "informed Brindley about the alleged work problems," Brindley asked to see a report documenting her deficient performance, and Robinett conceded that she had "no actual data" to support the allegations of deficient performance and no written report on the subject. (*Id*. at 6-7.) Throughout the rest of 2008 and early 2009, as she continued to point out violations of the corporate ethics code, the plaintiff maintains that Robinett, Davenport, and defendant Price made false statements and accusations about her, often during meetings that were "designed to intimidate and harass" the plaintiff. (*Id*. at 7.)

In the Summer of 2009, the plaintiff maintains, a report regarding her alleged workplace deficiencies was produced, although that report demonstrated that the plaintiff was an above

4

average employee from a productivity standpoint. On March 2, 2010, the plaintiff alleges that, "as a result of her failure to participate in the illegal and unethical conduct of her colleagues, [she] was terminated." (*Id*. at 8.) While the termination was claimed to be "for cause," Philips did not challenge the plaintiff's later application for unemployment benefits.

The plaintiff filed her Complaint in Williamson County Circuit Court on March 1, 2011. (Docket No. 1.) In that Complaint, the plaintiff sued the defendants "for retaliatory discharge, defamation, bad faith, negligent infliction of emotional distress (NIED), intentional infliction of emotional distress (IIED), hostile work environment, sexual harassment and wrongful discharge." (Docket No. 1 Ex. 1 at 1.) While the Complaint appeared to advance only state law claims, the plaintiff stated that the "bid rigging" and other graft constituted violations of the Federal Trade Commission Act. (*Id*. at 3-4.) The plaintiff made these allegations not to advance a FTCA claim, but in support of the state law retaliatory discharge claim; that is, she alleged that she was fired for reporting violations of federal law. (*Id*. at 7-8; *see also Escher v. BWXT Y-12 LLC*, 627 F.3d 1020, 1031 (6th Cir. 2010)(a retaliatory discharge claim in Tennessee requires an underlying "illegal activity" about which the plaintiff has complained or in which the plaintiff has refused to participate)).

On April 12, 2011, the defendants filed their Notice of Removal, citing federal question jurisdiction as the basis for removing this case to this court. (Docket No. 1 at 3.) That is, "this Court has original jurisdiction over this civil action under [] Federal Question Jurisdiction because . . . Plaintiff's claim of retaliatory discharge, although brought pursuant to state law, is based upon Defendant's alleged 'illegal activities' in violation of the FTCA." (*Id*.) Therefore,

while the plaintiff had no federal claims, interpretation of federal law would be required in order to evaluate the retaliatory discharge claim, which creates federal jurisdiction and makes removal proper. (*Id.; see also Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005)).

On April 27, 2011, the plaintiff filed her Amended Complaint and her Motion to Remand. (Docket Nos. 11-12.) The factual allegations in the Amended Complaint, while somewhat more detailed, are largely the same as in the state court Complaint, as are the claims asserted. (*See id.*) But, in the Amended Complaint, the plaintiff no longer asserts that the defendants' actions constituted violations of the FTCA. (Docket No. 12.) Rather, the plaintiff maintains that the bid rigging and other alleged misconduct were violations of the Tennessee Consumer Protection Act (TCPA).[3] (*Id.* at 4-5.)

## **ANALYSIS**

The plaintiff has filed a Motion to Remand in light of the fact that the Amended Complaint does not require the court to interpret federal law. The defendants object to remand and have filed motions to dismiss the Amended Complaint under Fed. R. Civ. P 12(b)(6). Philips' motion seeks to dismiss all claims but the state law retaliatory discharge claim against Philips, and the Individual Defendants' motion seeks to dismiss all claims and all Individual Defendants. (*See* Docket Nos. 16, 18.)

---

[3] In the state court Complaint, the plaintiff sued the Individual Defendants and "Philips Healthcare Informatics, Inc. d/b/a Philips Healthcare." (Docket No. 1 Ex. 1 at 1.) The defendants apparently pointed out that this is the incorrect name of the relevant entity (*see* Docket No. 6), and the Amended Complaint sues Philips Electronics North America Corporation ("Philips") instead. (Docket No. 12.)

6

**I.      Motion to Remand**

The plaintiff's argument in support of remand is very brief and does not challenge the propriety of the removal. It simply recites the procedural history discussed above and states that, in light of the Amended Complaint, "there is no basis for federal jurisdiction," as the federal question in the state court Complaint has been "removed," and there is not complete diversity between the plaintiff and all Defendants, as the plaintiff and the Individual Defendants all reside in Tennessee. (Docket No. 11.)

As made clear by the defendants' response, the plaintiff's decision, post-removal, to eliminate the initial basis for federal jurisdiction from the Complaint does not deprive the court of jurisdiction. (See Docket No. 15 at 3.) Indeed, the Sixth Circuit has held that jurisdiction is determined "at the time of removal" and subsequent events, whether "beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007)(internal quotation omitted); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000)(plaintiff's post-removal stipulation that it would not seek damages above the jurisdictional amount was insufficient to "oust" federal court of diversity jurisdiction that existed at the time of removal);[4] The court, therefore, retains jurisdiction over this case and may consider the Motions

---

[4]*See also Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457 n.6 (2007)(relying on "forum manipulation concerns," the Court stated that, "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction"); *Packard v. Farmer's Ins. Co. of Columbus*, 2011 WL 1885981, *3 (6th Cir. May 19, 2011)("at the time of removal Plaintiffs raised both state and federal claims – making subject matter jurisdiction proper. Although plaintiffs subsequently amended their complaint to eliminate federal claims, the dismissal of federal claims

to Dismiss.

## II. The Motions to Dismiss

### A. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

---

from a lawsuit does not deprive courts of supplemental jurisdiction.")

B.     **Philips' Motion**

Again, Philips does not dispute that the retaliatory (or wrongful) discharge claim is "plausible" as stated in the Amended Complaint. (Docket No. 17 at 1, 3.) But, Philips argues, the other claims, which are often vaguely made or asserted only in conclusory fashion, fall well short of the requirements under *Twombly* and *Iqbal*.[5]  (*Id*. at 2.)

I.     **Defamation and "bad faith"**

Philips points out that these claims are only noted in the "introductory paragraph" of the Amended Complaint and, therefore, they are "wholly unsupported by any factual allegations and should be dismissed." (Docket No. 17 at 3.) In response, apparently overlooking this part of Philips's brief, the plaintiff maintains that there was "no argument" by Philips challenging the defamation claim, and, therefore, that claim, along with retaliatory discharge, should proceed as "conceded." (Docket No. 22 Ex. 1 at 2-3.) The plaintiff goes on to say that "the defamation is obvious as Ms. Brindley alleges that the reason for her discharge was retaliatory and has no other rational basis. It must follow that the allegations of the Defendants about Ms. Brindley's job performance are false. Since she has not found work since being wrongfully discharged and

---

[5] At one point, Philips argues that the plaintiff lacks standing to pursue claims under the TCPA. (Docket No. 17 at 9-11.) In her response, the plaintiff clarifies that she is not asserting a claim under the TCPA, but, again, only references the TCPA as the authority for the "illegal activity" necessary to her retaliatory discharge claim. (Docket No. 22 Ex. 1 at 3-4). Additionally, as noted above, in the Amended Complaint, the plaintiff makes repeated reference to Philips's "failure to enforce its own internal policies." (*See* Docket No. 17 at 3.) To the extent that the plaintiff is attempting to assert a claim here, Philips argues that there is no cause of action or case law supporting liability for "failing to carry out [] business and operations as Plaintiff would have." (Docket No. 17 at 9.) In her response, the plaintiff clarifies that these allegations are not intended to advance an independent cause of action but are offered in support of her "hostile workplace and sexual harassment" claim. (Docket No. 22 Ex. 1 at 8.)

9

since the statements related to inadequate job performance were fabricated in order to justify the wrongful discharge, this meets all of the elements for defamation." (*Id.*)

In the reply, Philips reminds the court that it has not conceded the defamation claim and continues to argue that the "plaintiff did not sufficiently plead any defamation claim, or the elements thereof, and instead simply made a passing mention of the claim in the introductory paragraph of her Amended Complaint." (Docket No. 30 at 1.)

There appears to be no dispute that the plaintiff's vague "bad faith" claim should be dismissed as conclusory and unsupported. As to defamation, at a minimum, such a claim requires a showing that the defendant "published" (communicated to a third person) a defaming statement with some awareness of the falsity of the statement or some culpable disregard for the accuracy of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). From the Amended Complaint, it is entirely unclear (1) what the specific alleged false and defamatory statement was, (2) how the statement was "published" and (3) what the defendant's mental state was. The defamation claim is a "bare averment," insufficient to support a claim for relief. Therefore, the "bad faith" and defamation claims against Philips will be dismissed.

      **ii.**    **NIED and IIED**

Again, these claims are only referred to in the introductory paragraph of the Amended Complaint, and Philips argues that these claims should be dismissed, as the "plaintiff makes no allegations in support of her [NIED or IIED] claims against Philips." (Docket No. 17 at 8.) In response, the plaintiff only discusses the IIED claim, recognizing that, in order to sustain such a claim, the conduct alleged must be "extreme and outrageous . . . go[ing] beyond all bounds of

decency . . . atrocious and utterly intolerable in a civilized community." (Docket No. 22 Ex. 1 at 7 quoting *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)). Brindley then cites a case in which the plaintiff brought both a breach of contract and IIED claim related to stolen personal and erotic photographs, and the court determined that there was sufficient evidence of "outrageous conduct" for the IIED claim to go to the jury. (*Id*. at 7-8 citing *Dunn v. Moto Photo*, 828 S.W.2d 747, 753 (Tenn. Ct. App. 1991)).

While the Amended Complaint alleges retaliatory conduct (including creating false reports and firing the plaintiff for her failure to "go along") on Philips' part, there is nothing in the Amended Complaint to suggest the type of outrageous conduct that might constitute an IIED claim, and the NIED claim is, again, simply a "bare averment," not even defended in briefing here. Both of these claims against Philips will be dismissed.

### iii. Hostile work environment/sexual harassment[6]

A claim of a hostile work environment against an employer based on same-sex sexual harassment is clearly and narrowly defined in the case law. That is, the plaintiff must show that, as a member of a protected class, she was subjected to harassment based upon sex, the

---

[6]While not explicitly stated in the Amended Complaint, the court presumes that this claim is brought under the Tennessee Human Rights Act (THRA) and not Title VII (federal law), as the plaintiff has attempted to disavow any federal claims in this case. Regardless, for present purposes, the analysis under Title VII and the THRA is the same. *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006); *see also Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010)(rejecting traditional burden shifting analysis employed by federal courts to evaluate civil rights claims but indicating that the plaintiff still has the burden to sufficiently establish the basic elements of the *prima facie* claim); *Robinson v. Carefocus*, 2011 WL 2672037, n.4 (E.D. Tenn. July 8, 2011)(in any event, collecting cases that have determined that *Gossett* announced a procedural rule not binding on federal courts).

11

harassment "had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and there exists some basis for liability on the part of the employer." *Grace v. USCAR*, 521 F.3d 655, 678-79 (6th Cir. 2008). In order to prove that the discrimination was "based on sex," the plaintiff must show that either (1) the harasser is homosexual or otherwise motivated by sexual desire for the plaintiff; (2) the harasser was "motivated by general hostility" toward women in the workplace; or (3) the alleged harasser treated males better in the mixed-sex workplace. *King v. Super Serv. Inc.*, 68 Fed. Appx. 659, 663 (6th Cir. 2003). Importantly, the laws prohibiting same-sex sexual harassment are not designed to "purge the workplace of vulgarity" or boorish conduct. *Baugham v. Battered Women, Inc.*, 211 Fed. Appx. 432, 439-40 (6th Cir. 2006).

In light of this case law, Philips argues that the plaintiff's claim fails on its face, as the plaintiff has merely alleged that she overheard Scott make sexually inappropriate comments and boasts regarding her sexual prowess. (Docket No. 17 at 5-6.) That is, there are no allegations that the plaintiff was harassed because of her sex, as that phrase has been defined. (*Id.*)

In response, the plaintiff points to Philips's employment manual, which prohibits sexual harassment and states that "whether the behavior constitutes harassment is judged from the point of view of the victim" and imposes obligations on supervisors to respond to complaints of sexual harassment. (Docket No. 22 Ex. 1 at 4-5.) Because the defendant's own "no tolerance" policies would consider Scott's conduct to be "sexual harassment," the plaintiff argues, she must have stated a valid claim. (*Id.*)

The plaintiff's argument is entirely divorced from the *legal standard* for this type of

claim and is without merit. Here, there is no suggestion that the "harassment" was based upon sex – there is no indication that Scott was motivated by sexual desire for the plaintiff, that she had hostility for women in the workplace or that she treated males better in a mixed-sex workplace. Rather, the Amended Complaint simply alleges that Scott made vulgar and boorish comments that the plaintiff overheard. While such conduct may not have been allowed under Philips's corporate policy, the conduct alleged is insufficient to state a plausible claim for relief, Where, as here, there is no suggestion from the Complaint that the plaintiff was harassed based upon sex, it is entirely appropriate to dismiss the claim under Rule 12(b)(6). *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006). Therefore, the court will dismiss the sexual harassment/hostile work environment claim against Philips.

### C. Individual Defendants' Motion

Again, the Individual Defendants seek dismissal of all causes of action against them. (Docket No. 19 at 2.) As indicated above, much of the briefing (on both sides) is repetitive, and most of the court's rulings above are applicable to the Individual Defendants as well. That is, the court's rulings on the viability (or lack thereof) of the "bad faith," defamation, and NIED claims apply equally to the Individual Defendants, as these claims constitute unsupported "bare averments" in the Amended Complaint. Likewise, it is clear that the plaintiff is not asserting an independent TCPA claim in this matter, and the pleading deficiencies that required the dismissal of the IIED claim against Philips also dictate the dismissal of that claim against the Individual Defendants.

Further, while the Individual Defendants add a section to the briefing asserting that "the

13

Amended Complaint does not establish individual liability for Hostile Work Environment Sexual Harassment," in light of the court's findings above, it is not necessary to reach the individual liability issues. (Docket No. 19 at 7.) Again, the Amended Complaint fails to state a plausible claim for same-sex sexual harassment because it fails to state a basis to conclude that any harassment was "based on sex." Despite the plaintiff's argument in her response that again alludes to Philips's corporate policies, the legal issue is whether the plaintiff has sufficiently pled harassment "based on sex," and, for the reasons discussed above, she has not. (Docket No. 33 Ex. 1 at 4-6.) Therefore, this claim will be dismissed against the Individual Defendants as well.

Finally, as to the retaliatory discharge claim, the Individual Defendants argue that Tennessee law, while creating a cause of action for whistleblower retaliatory discharge, "neither provides for or permits individual liability." (Docket No. 19 at 10.) The Individual Defendants then go on to cite a few Tennessee cases holding that there is no individual liability under Tennessee law for retaliatory discharge under a whistleblower theory; that is, such liability can only be sought against the employer, not individuals who worked for that employer. (*Id.* citing *Baines v. Wilson Cty.*, 86 S.W.3d 575, 583 (Tenn. Ct. App. 2002); *Hubrig v. Lockheed Martin Energy Sys.*, 1998 WL 240128, *12 (Tenn. Ct. App. May 4, 1998); *Cate v. City of Rockwood*, 2006 WL 1129382, *7 (E.D. Tenn. April 27, 2006). In her response, the plaintiff concedes that "retaliatory discharge is limited to Philips and cannot be assigned to the Individual Defendants." (Docket No. 33 Ex. 1 at 6.) Therefore, this claim will likewise be dismissed against the Individual Defendants.

## CONCLUSION

Both Motions to Dismiss will be granted. All claims against Philips, aside from retaliatory discharge, will be dismissed. All Individual Defendants will be dismissed.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
U.S. District Court Judge